**Tia GOLDHIRSCH, Plaintiff,**

**v.**

**Taylor MAJEWSKI, an infant over the age of fourteen years by his father and natural guardian, Anthony MAJEWSKI, Anthony Majewski, Patricia Majewski, Richard Shust, James Beck, an infant over the age of fourteen years by his mother and natural guardian, Gail Beck, Curtis Akacki, an infant over the age of fourteen years by his mother and natural guardian, Carrie Akacki, and James Akacki, Defendants.**

**No. 98 Civ. 7261(WCC).**

United States District Court, S.D. New York.

March 6, 2000.

Ackacki; James Beck, age 17, by Beck's mother Gail Beck; and Curtis Ackacki, who is about age 17, by Ackacki's mother Carrie Ackacki[1] for injuries sustained when she was struck in the eye by a stray paintball pellet while watching a game of paintball. The game was played on February 1, 1998 on land adjacent to the Majewskis' property. Plaintiff has sued all defendants in tort, on theories of negligence in the construction and supervision of the paintball field and strict liability for entrusting paintball guns to the minor defendants. Plaintiff also sues the Majewski defendants separately, claiming they are strictly liable for plaintiff's injuries because the game of paintball is inherently dangerous and the paintball field constituted a public nuisance. Anthony and Patricia Majewski (hereinafter, the "moving defendants") now move for summary judgment, claiming that: they cannot be liable for nuisance as they did not own or control the land on which the game was played; they cannot be liable for negligence as they did not participate in the design or construction of the paintball field; and they cannot be held liable for entrusting the minor defendants with paintball guns, as the guns were not purchased by them, but by defendant Richard Shust. For the reasons that follow, the moving defendants' motion is denied as to Count Three of the Complaint as it relates to Taylor Majewski and in all other respects is granted.

Law Offices of Steven Miller, Roslyn Heights, NY (Mary Anne Walling, of counsel), for plaintiff.

Lewis, Johs, Avallone, Aviles & Kaufman, Melville, NY (Michael T. Colavecchio, of counsel), for defendants Taylor Majewski, Anthony Majewski and Patricia Majewski.

## OPINION AND ORDER

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Tia Goldhirsch brings this action against defendants Taylor Majewski, age 17; his parents Anthony and Patricia Majewski; Richard Shust, age 20; Jason

## BACKGROUND

In December 1997, defendants Taylor Majewski, James Beck, Curtis Ackacki, Jason Ackacki and Richard Shust went to a recreational complex to play paintball. The game was played in an open field with boundaries marked by caution tape.

The object of the game is either to capture the opposing team's flag or to eliminate the opposing team members. The players use paintball guns loaded with

---

1. This Court granted default judgments against defendants Curtis Ackacki, by his mother Carrie Ackacki, and Jason Ackacki on May 5, 1999.

paintball pellets, dime-sized rubber balls filled with paint which burst on impact. The pellets are propelled from the gun by carbon dioxide. Participants in the game wear a face mask with goggles. A player who is "shot" is marked by paint and must leave the playing field for the remainder of the game.

After the aforementioned defendants played paintball at the recreational complex, several of them, including Richard Shust, traveled to Jersey City, New Jersey to purchase ten paintball guns, ten masks, and ten tanks of carbon dioxide. (Shust Dep. at 11–12.) Shust testified at his deposition that he purchased one gun, mask and tank for himself, and that he bought the other guns, tanks and masks for nine other people who gave him the money for the purchases, including Taylor Majewski and James Beck. (*Id.* at 12–14.) Shust, who was eighteen years old at the time, testified that he "had heard from hearsay that you had to be eighteen to purchase the guns and sixteen to use them." (*Id.* at 15.)

Taylor Majewski testified at his deposition that he did not discuss purchasing paintball equipment with his parents prior to the trip to Jersey City. (T. Majewski Dep. at 20.) Taylor testified that he kept the paintball gun locked in a trunk in his bedroom and that he did not show it to his parents prior to February 1, 1998, although he told his mother he bought it. (*Id.* at 36–37.) James Beck testified that prior to February 1, 1998, Patricia and Anthony Majeswki saw Beck and his friends with their paintball equipment. (Beck Dep. at 27–28.) Taylor stored guns and helmets belonging to his fellow defendants and other paintball enthusiasts in his family's basement, but testified that he did not discuss storing the equipment there with his parents. (T. Majewski Dep. at 81.)

In January 1998, Taylor Majewski, Curtis Ackacki, James Beck and other paintball players created a paintball field on property owned by Richard Standford.

(T. Majewski Dep. at 45.) The Stanford property is adjacent to the Majewski's home at 204 Island Turnpike in Warwick, New York. To create the paintball field, the players purchased caution tape and marked off boundaries. They used plywood found on the Majewski property to create bunkers and dug holes in the field. (Beck Dep. at 30–31.)

The players gained access to the field by walking through the Majewski property. Beck testified that they played six times prior to the occasion on which plaintiff was injured. (Beck Dep. at 20.) Shust testified that they played more than ten times, (Shust Dep. at 6), and Taylor Majewski testified that he played between fifteen to twenty times. (T. Majewski Dep. at 46.) Beck testified that one day when Taylor Majewski was not playing, he had permission from Taylor to go into the Majewski basement where the paintball equipment was stored. (Beck Dep. at 87.)

Taylor Majewski testified that prior to creating the paintball field, he used the Stanford property for hunting and target practice with his father and that he also walked and biked on the property. (T. Majeswki Dep. at 23–27, 30, 33.)

Anthony Majewski testified that he was aware of the fact his son owned a paintball gun prior to plaintiff's accident by "[t]he talk of having it and visually seeing." (A. Majewski Dep. at 5.) Anthony Majewski testified that his son had taken at least one hunting safety course prior to plaintiff's accident. (*Id.* at 7.) He testified that he knew that other boys would come on to his property in order to play on the Stanford property. (*Id.* at 11.) Anthony Majewski stated that the paintball field was two hundred to two hundred and fifty feet from his house, and that he might have seen the field prior to the accident, although he was not sure. (*Id.* at 20–22.) Patricia Majewski testified that she knew prior to plaintiff's injury that Taylor and his friends were playing paintball on the Stanford property, but testified that she

had never seen the field itself and that she has never been on the Stanford property. (P. Majewski Dep. at 8–10.)

On February 1, 1998, Beck and Shust arrived at the Majeswki house and went to the basement where Beck had left his paintball gun. (Beck Dep. at 47.) Matt Shust, Richard Shust's brother, arrived later and the four played several paintball games with Taylor Majewski. (*Id.* at 48.) Several hours later, Jason Ackacki arrived with plaintiff. Jason Ackacki and Taylor went back to the Majewski house to get equipment for Jason. It appears that Curtis Ackacki had joined the game as well as Jason. Thus, Beck, Curtis Ackacki and Taylor were on one team and Jason Acacki and Richard and Matt Shust were on the other. (*Id.* at 58.) At the beginning of the game, plaintiff was sitting on a mound of dirt within the bounds of the playing field. (*Id.* at 59.) At some point during the game, the players called a time-out and told plaintiff to stand outside the bounds where the players who had been "shot" would go. Plaintiff was not wearing goggles. (*Id.* at 67.)

Matt Shust was eliminated from the game and went to the out-of-bounds area where plaintiff was standing. At some point, the other players started shooting at Richard Shust and plaintiff was struck in the eye with a paintball pellet. (*Id.* at 74, 78–82.) After plaintiff was shot, Beck stated, Matt Shust told him that he had offered plaintiff his goggles. (*Id.* at 85.) Taylor Majewski testified that he did not know whether his parents were home when the incident took place. (T. Majewski Dep. at 14.) Plaintiff testified that she had never met Anthony and Patricia Majewski. (Pl.Dep. at 18–19.)

## DISCUSSION

### I. *Summary Judgment Standard*

A district court may grant summary judgment only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper." *Vann v. City of New York,* 72 F.3d 1040, 1049 (2d Cir.1995). The party seeking summary judgment has the burden of showing that no genuine factual dispute exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

### II. *Negligence*

In Count One of her complaint, plaintiff claims that defendants, including the moving defendants, negligently created, designed, constructed, supervised and managed the paintball field. Plaintiff does not contest that the playing field was not located on Majewski property and plaintiff has offered no proof that the Majewski parents participated in the construction or design of the field. Plaintiff contends, however, that "defendants exercised control and possession of this property, not only by the construction and operation of the paintball field but their use of the same for hunting, walking and biking." (Pl.Mem. Opp.Summ.J. at 6.) Plaintiff further claims that Anthony Majewski knew or should have known that the adjacent property was being used for a dangerous activity and that he had "knowledge and opportunity to inspect and correct the danger created on the paintball field." (Id.)

It is well-settled New York law that liability for a dangerous condition on property is predicated upon ownership, occupancy, control or special use of the property. *See Turrisi v. Ponderosa, Inc.,* 179

A.D.2d 956, 957, 578 N.Y.S.2d 724 (N.Y.App.Div.1992); *Palmer v. Prescott,* 208 A.D.2d 1065, 617 N.Y.S.2d 411, 412 (N.Y.App.Div.1994). Plaintiff contends that the moving defendants' liability stems from the special use doctrine. (*See id.* at 7.)

> The special use doctrine
> was fashioned in New York in the previous century, to authorize the imposition of liability upon an adjacent occupier of land for injuries arising out of circumstances where permission has been given, by a municipal authority, to interfere with a street solely for private use and convenience and in no way connected with the public use.... Consequently, where the abutting landowner derives a special benefit from that public property unrelated to the public use, the person obtaining the benefit is required to maintain the used property in a reasonably safe condition to avoid injury to others.

*Kaufman v. Silver,* 90 N.Y.2d 204, 207, 659 N.Y.S.2d 250, 681 N.E.2d 417 (N.Y.1997) (internal citations and quotations omitted).

In *Kaufman,* the New York Court of Appeals held that the special use doctrine may be applicable to "beneficial physical alterations involving adjoining properties which are privately owned." *Id.* at 209, 659 N.Y.S.2d 250, 681 N.E.2d 417. However, the court noted that where the adjoining land is privately owned, the requirement of access and control may pose more of a "liability hurdle" than where the abutting area is a public street or sidewalk. *See id.* at 208–09, 659 N.Y.S.2d 250, 681 N.E.2d 417. "[A]ccess and ability to exercise control over the special use are essential to the existence of a duty to repair and maintain." *Id.* at 208, 659 N.Y.S.2d 250, 681 N.E.2d 417.

In the instant case, plaintiff claims that the moving defendants had access to and ability to control the paintball field. (Pl.Mem.Opp.Summ.J. at 7.) However, to demonstrate that the moving defendants had access to and ability to control the Stanford land, plaintiff must demonstrate that the moving defendants had the ability to exclude others from the Stanford lot, or that they had a right of possession to the lot. *Turrisi,* 179 A.D.2d at 958, 578 N.Y.S.2d 724 ("It is clear that control is the test which generally measures the responsibility of the owner or occupant of real property for defects relating to it."). Plaintiff has offered no evidence that the moving defendants had the ability to exclude others from the lot. Although Anthony Majewski used the lot for hunting with Taylor Majewski and Taylor also had biked and walked on the lot, there is no evidence that the moving defendants had a right of possession to the lot. Accordingly, plaintiff's contention that the moving defendants are liable for injuries to plaintiff as a result of their special use of the Stanford property is unavailing. Accordingly, the moving defendants are entitled to summary judgment as to Count One of the Complaint.

### III. *Strict Liability and Public Nuisance*

Plaintiff contends in Counts Two and Four of her Complaint that the moving defendants are strictly liable to plaintiff for her injuries because the game of paintball is an inherently dangerous activity and the paintball game constituted a public nuisance.

The New York Court of Appeals has identified several factors, taken from the Restatement of Torts Second, § 520, to aid in the analysis of whether an activity is abnormally dangerous:

> (1) existence of a high degree of risk of some harm to the person, land or chattels of others; (2) likelihood that the resulting harm will be great; (3) inability to eliminate the risk by the exercise of reasonable care; (4) extent to which the activity is not a matter of common usage; (5) inappropriateness of the activity to the place where it was carried on; and (6) the extent to which the

activity's value is outweighed by its danger.

*Doundoulakis v. Town of Hempstead*, 42 N.Y.2d 440, 448, 398 N.Y.S.2d 401, 368 N.E.2d 24 (N.Y.1977).

The Court of Appeals has noted that "[w]ith respect to strict liability it is not every dangerous activity which will establish liability. It is only when, under the circumstances, an activity is abnormally dangerous that the actors become legally responsible." *Id.* at 453, 398 N.Y.S.2d 401, 368 N.E.2d 24.

Although we have not found, and the parties have not brought to our attention, a New York case squarely on point, other state courts have held that paintball is not an abnormally dangerous activity. The Connecticut Superior Court held that paintball was not abnormally dangerous, even where the plaintiff alleged that the game's organizers failed to provide "adequate regulations and safe havens for participants." *Bashura v. Strategy Plus, Inc.*, No. 95 Civ. 0050871S, 1995 WL 626176 at *4 (Conn.Super.Oct.17, 1995).

The Court of Civil Appeals of Oklahoma, also using the above factors to frame its analysis, decided that an organized game of paintball was not an ultrahazardous activity as a matter of law. *Taylor v. Hesser*, 991 P.2d 35, 39 (Okla.Civ.App.1998). There, a player was shot in the eye with a paintball pellet after removing his goggles on the field, despite having been warned not to remove his goggles. The court found that the "undisputed evidence does not show a high degree of risk of harm. In addition, it is undisputed the risk is eliminated by the exercise of reasonable care in wearing protective goggles." *Id.*

■ We agree with these courts that, as a matter of law, the game of paintball as it was played in the instant case is not an abnormally dangerous activity. Although

there exists risk of harm to the person—and risk of serious harm, as evidenced by plaintiff's injury to her eye—the risk could have been eliminated by the exercise of reasonable care. Had plaintiff been wearing eye goggles, she likely would not have sustained serious injury. Furthermore, the defendants played the game in a clearing in the woods, some distance from the nearest house. Although from the evidence submitted it is unclear what the range of the paintball guns was, Anthony Majewski testified that his house, at the point it was closest to the field, was 200 to 250 feet away.

In addition, the game of paintball is not an uncommon activity. The Court of Appeals of Washington has noted that paintball, among other contests such as dodgeball, football and rugby, "although capable of producing injuries, have been generally accepted by society as lawful athletic contests, competitive sports or concerted activities not forbidden by law." *Washington v. Hiott*, 97 Wash.App. 825, 987 P.2d 135, 136 (1999).

■ Having decided that paintball is not an abnormally dangerous activity, we next turn to plaintiff's argument that the paintball field located on the Stanford property constituted a public nuisance for which the moving defendants should be held strictly liable.[2] An action for a public nuisance must allege " 'conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all in a manner such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons.' " *Chase Manhattan Bank, N.A. v. T&N plc*, 905 F.Supp. 107, 125 (S.D.N.Y. 1995) (citing *Copart Indus. Inc. v. Consolidated Edison Co.*, 41 N.Y.2d 564, 394 N.Y.S.2d 169, 362 N.E.2d 968, 971 (1977)).

---

**2.** Plaintiff states in her opposition papers that she "does not claim a private nuisance but that the moving defendants created a public nuisance on land residentially zoned and not appropriately authorized, supervised, constructed or operated for the use of a paintball field." (Pl.Mem.Opp.Summ.J. at 8.)

Ordinarily, a private plaintiff may not maintain an action for public nuisance; however, "a private party may sustain such a claim if some special harm has been suffered different from the harm suffered by other members of the public." *Id.* Thus, this court denied summary judgment for defendant in an action for public nuisance in which the plaintiff, Chase Manhattan Bank, alleged that the presence of asbestos in One Chase Manhattan Plaza constituted a health threat to the public at large and caused Chase special damages, in that Chase had to pay for the removal of the asbestos. *Id.*

■ Whether a nuisance exists depends upon the facts and circumstances in each case. *Hoover v. Durkee*, 212 A.D.2d 839, 622 N.Y.S.2d 348, 349 (N.Y.App.Div.1995). Here, plaintiff has failed to allege facts which would support a claim for public nuisance. First, the paintball game was played in a wooded area on private land. It cannot be said that the playing of the game threatened to "endanger or injure the property, health, safety or comfort of a considerable number of persons." As discussed above, we have found that the activity was not abnormally dangerous. Plaintiff, the sole spectator, likely would not have been hurt if she had been wearing safety goggles.

Furthermore, plaintiff was not exercising a "public right" at the time of her injury. Plaintiff was a visitor to the paintball field. There is no evidence that the paintball players and plaintiff were invited onto the Stanford land, or even that they had permission to be there. Certainly, the paintball field was not a public place where the public had a right to be. Accordingly, plaintiff was not in the exercise of a public right while on the premises of the Stanford land and cannot base her right to recover on a theory of public nuisance. *See Bashura*, 1995 WL 626176 at *3 (holding that business invitee to paintball field was not exercising a public right and thus could not bring public nuisance claim).

For the above reasons, the moving defendants' motion for summary judgment is granted as to Counts Two and Four of the Complaint.

## IV. *Negligent Entrustment of a Dangerous Instrument*

In Count Three of her Complaint, plaintiff alleges that the moving defendants are liable for negligently entrusting paintball guns to the minor defendants. (*See* Pl. Mem.Opp.Summ.J. at 4.)

### A. *Taylor Majewski*

■ The general rule is that a parent is not liable for the torts of his children. *See Gordon v. Harris*, 86 A.D.2d 948, 949, 448 N.Y.S.2d 598 (N.Y.App.Div.1982). However, pursuant to New York law, "[a] parent owes a duty to a third person for negligent entrustment of a dangerous instrument to his child when he is aware of and capable of controlling the instrument's use." *Pfenning v. Agri Business Brokerage Corp.*, 124 A.D.2d 1013, 509 N.Y.S.2d 225 (N.Y.App.Div.1986).

■ Plaintiff makes much of the fact that the use of paintball guns by minors is regulated by statute. In New York, it is illegal for a person under the age of sixteen to "possess any air-gun ... or other instrument or weapon in which the propelling force is ... air." N.Y.Penal Law § 265.05. An "air-gun" includes a paintball gun. *See Adamowicz v. Shafer*, 155 Misc.2d 695, 589 N.Y.S.2d 761, 762 (N.Y.Sup.Ct.1992). Violation of the statute constitutes per se negligence. *See id.* Taylor Majewski testified that he was born on January 6, 1983; thus he was fifteen at the time of the incident and a jury could find Taylor Majewski liable for per se negligence.

However, liability on the part of the moving defendants cannot be predicated on the parental relationship alone. *Gordon*, 86 A.D.2d at 948–49, 448 N.Y.S.2d 598. As stated in the New York Pattern Jury Instructions for negligence in permitting use of an instrumentality, "[a] parent

is not responsible for the acts of (his, her) child, but is responsible for the failure to use reasonable care in entrusting or leaving in the possession of the child an instrument which, in view of the instrument, the age, intelligence, and disposition of the child and (his, her) prior experience with such an instrument, constitutes an unreasonable risk of harm to others." N.Y. PJI 2:260.

Both of the moving defendants testified during their depositions that they approved of Taylor having the gun, although neither parent knew prior to the purchase that he was planning to buy it. (*See* P. Majewski Dep. at 5; A. Majewski Dep. at 16.) Determination of whether the paintball gun was a dangerous instrument in the hands of Taylor Majewski is an issue for the trier of fact. *See Craft v. Mid Island Dep't Stores, Inc.*, 112 A.D.2d 969, 970, 492 N.Y.S.2d 780 (N.Y.App.Div.1985). Accordingly, the moving defendants' motion for summary judgment as to Count Three is denied as it relates to negligent entrustment of a dangerous instrument to Taylor Majewski.

### B. *The Other Minor Defendants*

Plaintiff claims that the moving defendants are not only liable for their son's use of a paintball gun, but for the other minor defendants' use as well. At least one New York court has recognized that an adult may be liable where another child shot the plaintiff with a BB gun, but the ammunition was supplied by the adult's son. *See Zellers v. Devaney*, 155 Misc.2d 534, 535, 589 N.Y.S.2d 134 (N.Y.Sup.Ct.1992). There, the defendant did not purchase the ammunition and his son Anthony was not present at the shooting, but had left a cache of BBs at the scene. The court found that the "testimony before trial indicates that Anthony's parents gave Anthony two BB guns and ammunition and were well aware of his use of both. It is not unforeseeable that the use of a BB gun, and the ammunition, by a 14–year–old infant could create an unreasonable risk of injury to a third party." *Id.* at 536, 589 N.Y.S.2d 134.

In the instant case, it is undisputed that the moving defendants did not buy the paintball guns for the minor defendants. As discussed above, Taylor Majewski testified that his parents were not aware that he owned a paintball gun until after its purchase. Richard Shust testified that he made the purchase for Taylor and that he also bought the other minor defendants' guns for them with money they gave him.

Plaintiff attempts to hold the moving defendants liable for negligent entrustment because "the paintball rifles were kept in the Majewski home where they were picked up by the minor defendants before the games. This was known to them." (Pl.Mem.Opp.Summ.J. at 4.) However, to be liable for negligent entrustment, the adult defendant must have had "supervision and control" of the minor. *Lichtenthal v. Gawoski*, 44 A.D.2d 771, 772, 354 N.Y.S.2d 267 (N.Y.App.Div.1974). Generally, where the defendant has not undertaken a duty to supervise the minor children of another, no such duty exists. *Gordon*, 86 A.D.2d at 948, 448 N.Y.S.2d 598.

Here, plaintiff has adduced no evidence that the minor defendants, other than their son Taylor Majewski, were subject to the moving defendants' supervision and control. Although at least some of the minor defendants stored their equipment in the Majewski basement, the game itself was not played on their property. There is no evidence that the moving defendants were at home the day of the incident. Taylor Majewski testified that he did not tell his parents about plaintiff's injury until the day they received the summons in the instant action. (T. Majewski Dep. at 136.) Taylor further testified that he did not discuss keeping the players' guns and helmets in the basement with his parents, and that neither parent ever told him that they saw the equipment in the basement. (*Id.* at 81.)

Application of the tort of negligent entrustment to the undisputed facts of the

instant action would broaden a parent's duty. We are not prepared to extend the rule of liability of a parent beyond that now laid down by the New York courts. Accordingly, the moving defendants' motion for summary judgment on Count Three as it relates to negligent entrustment of a dangerous instrument to minor defendants other than Taylor Majewski is granted.

## CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is denied as to Count Three of the Complaint as it relates to Taylor Majewski and in all other respects is granted.

SO ORDERED.