820 A.2d 93 (2003)
359 N.J. Super. 399
STATE of New Jersey in the INTEREST of G.C.
Superior Court of New Jersey, Appellate Division.
Argued March 19, 2003.
Decided April 11, 2003.
*95 Thomas R. Ashley, Newark, argued the cause for appellant G.C. (Ashley & Charles, attorneys; Mr. Ashley, on the brief).
Simon Louis Rosenbach, Assistant Prosecutor argued the cause for respondent (Bruce J. Kaplan, Prosecutor Middlesex County, attorney; Mr. Rosenbach, of counsel and on the brief).
Before Judges NEWMAN, CARCHMAN and PARRILLO.
*94 The opinion of the court was delivered by NEWMAN, J.A.D.
On June 29, 2001, G.C., a juvenile, shot a paintball gun at J.H.'s vehicle. The predisposition report states that G.C.'s reason for doing so was that J.H. had used his dog and his brother to threaten G.C. on prior occasions. On August 1, 2001, J.H. filed a complaint against G.C. Pursuant to the complaint, G.C. was charged with criminal mischief in violation of N.J.S.A. 2C:17-3a under docket number FJ-0570-02. On September 13, 2001, under the same docket number, G.C. was also charged with unlawful possession of a weapon in violation of N.J.S.A. 2C:39-5 and possession of a weapon for an unlawful purpose in violation of N.J.S.A. 2C:39-4. On December 12, 2001, G.C. pled guilty to the charge of unlawful possession of a weapon in the fourth degree, N.J.S.A. 2C:39-5d. The other two charges against G.C. were dismissed.
The following colloquy took place between G.C. and his attorney during the taking of the plea.
Q So you understand that by working out a plea agreement with the State today that you're waiving, or agree to give up your right to have a trial. You understand that?
A Yes.
Q And is it correct that you wish to plead guilty to the count two, which is a fourth-degree possession of a weapon and the all the other charges are being dismissed?
A Yes.
Q Are you doing so voluntarily and waiving your right to trial by doing that?
A Yes.
Q Okay. [G.C.], ... on June 29th of this year were you in Piscataway?
A Yes.
Q And on that day did you come into possession of a paintball gun?
A Yes.
Q And did you shoot at the car of somebodywhat's the name of the person?
A [J.H.].
Q [J.H.], and you shot the paintball gun at the car of that person?
A Yes.
[Juvenile's attorney]: I think that's satisfactory, Judge.
[Prosecutor]: That's fine with the State, Judge.
THE COURT: Okay. I accept the plea to countcount two on complaint FJ-12-570.
When G.C. committed these offenses, he was on probation for prior offenses of assault and escape. Because he pled guilty, he was charged with violation of probation, under docket number FJ-1697-02 on December 12, 2001, because one of the conditions *96 of his probation was that he remain arrest free. On January 16, 2002, G.C. also pled guilty on the violation of probation charge.
On January 16, 2002, the court sentenced G.C. to one year of incarceration for unlawful possession of a weapon and to two years of incarceration for the violation of probation. The two terms were to run concurrently. The usual penalty and fine were imposed. We were advised at argument that G.C. was released from incarceration in December 2002, but remains under supervision.
On appeal, G.C. argues that his conviction should be overturned because there was not an adequate factual basis for his guilty plea. G.C. contends that there was no factual basis to conclude that he unlawfully possessed a weapon because the paintball gun in his possession is not a weapon since it is not a firearm. G.C. also asserts that the paintball gun is not a weapon because it is incapable of lethal use and of inflicting serious bodily injury. Furthermore, G.C. maintains that there was not a sufficient basis for the guilty plea because there were no facts to indicate that the paintball gun was possessed in circumstances not manifestly appropriate for its lawful use. Lastly, G.C. asserts that if we were to reverse his conviction, out of fairness the sentence resulting from the violation of probation should be vacated and remanded for resentencing. While the State vigorously argues that the conviction should stand, the Assistant Prosecutor, at argument, agreed that were the conviction reversed, the sentence from the violation of probation should be revisited as well on remand. We now reverse.
We begin our inquiry by restating the applicable legal principles. Rule 3:9-2 expressly states that "[t]he court, in its discretion, may refuse to accept a plea of guilty and shall not accept such plea without first addressing the defendant personally and determining by inquiry of the defendant and others ... that there is a factual basis for the plea." Thus, a guilty plea is valid and acceptable by the court only if there is a sufficient factual basis for it. State ex rel. T.M., 166 N.J. 319, 325, 765 A.2d 735 (2001); State v. Barboza, 115 N.J. 415, 420-21, 558 A.2d 1303 (1989). This rule applies to juveniles as well as adults. T.M., supra, 166 N.J. at 326, 765 A.2d 735.
Under this rule, it is necessary for the court to be "`satisfied from the lips of the defendant that he committed the acts which constitute the crime.'" Barboza, supra, 115 N.J. at 422, 558 A.2d 1303. However, a court is not proscribed from using its discretion in determining how best to elicit this necessary factual basis; it may question the defendant directly or interrogate others that the defendant acknowledges. T.M., supra, 166 N.J. at 327, 765 A.2d 735. The factual basis "should be examined in light of all surrounding circumstances and in the context of an entire plea colloquy." Ibid. If a sufficient factual basis does not exist, and a plea was accepted despite this fact, then a reviewing court should vacate the guilty plea and place both, the defendant or, as here, the juvenile, and the prosecution, in the position they would have been in if the plea had properly been rejected. Barboza, supra, 115 N.J. at 424, 427, 558 A.2d 1303.
To determine whether an adequate factual basis existed for G.C.'s guilty plea it is necessary to examine what action is proscribed by the charge to which he pled guilty. G.C. pled guilty to unlawful possession of a weapon pursuant to N.J.S.A. 2C:39-5d. That statute states that "[a]ny person who knowingly has in his possession any other weapon under circumstances not manifestly appropriate for such lawful uses as it may have is guilty of *97 a crime of the fourth degree." N.J.S.A. 2C:39-5d.
For purposes of this statute, a weapon is defined as "anything capable of lethal use or of inflicting serious bodily injury." N.J.S.A. 2C:39-1r. It should be noted that this definition does not require proof as to how the defendant used the object or intended to use it to determine whether the object can be deemed a weapon. See State v. Brown, 325 N.J.Super. 447, 456-457, 739 A.2d 975 (App.Div.1999), certif. denied, 163 N.J. 76, 747 A.2d 285 (2000). The definition also lists particular objects that are considered weapons, including firearms, but states that the list is not exclusive. N.J.S.A. 2C:39-1r.
Firearms are separately defined in N.J.S.A. 2C:39-1f as:
[1) A]ny gun, device or instrument in the nature of a weapon from which may be fired or ejected any solid projectable ball, slug, pellet, missile or bullet, or any gas, vapor or other noxious thing, by means of a cartridge or shell or by the action of an explosive or the igniting of flammable or explosive substances. [2) ] It shall also include, without limitation, any firearm which is in the nature of an air gun, spring gun or pistol or other weapon of a similar nature in which the propelling force is a spring elastic band, carbon dioxide, compressed or other gas or vapor, air or compressed air, or is ignited by compressed air, and ejecting a bullet or missile smaller than three-eighths of an inch in diameter, with sufficient force to injure a person.
[N.J.S.A. 2C:39-1f.]
G.C. argues that the plea did not have a sufficient factual basis because there were no facts to suggest that G.C. possessed a weapon since the only object stated to be possessed by him was a paintball gun and a paintball gun is not a weapon. First, G.C. contends that a paintball gun is not a weapon because it is not a firearm. In so arguing, G.C. relies on Minnesota v. Coauette, 601 N.W.2d 443 (Minn.Ct.App.1999), which holds that a paintball gun is not a firearm or a dangerous weapon because it is not designed to inflict any great harm and not intended to be used for anything other than playing the game of paintball. Second, G.C. also contends that a paintball gun is not a weapon because it is incapable of lethal use or of inflicting serious bodily injury.
We agree that the paintball gun cannot satisfy the definition of a firearm under N.J.S.A. 2C:39-1f. The paintball gun does not emit any solid pellet because its pellets dissolve on impact and are not designed to pierce the skin. The pellets are also not three-eighths of an inch or smaller in size.
However, the definition of a weapon under N.J.S.A. 2C:39-1r is not limited to only firearms, but includes objects capable of being used lethally or capable of inflicting serious bodily injury. For example, in State v. Villar, the Court held that the jury could reasonably find that a beer stein, used to assault a woman, was capable of inflicting serious bodily injury, and thus was a weapon, because of its size and weight. 150 N.J. 503, 514, 696 A.2d 674 (1997). Although in Villar the statute at issue was N.J.S.A. 2C:39-4, possession of a weapon for an unlawful purpose, id. at 507, 696 A.2d 674, the same definition of a weapon applies to that provision as well, N.J.S.A. 2C:39-1.
Like a beer stein, a paintball gun is capable of inflicting serious bodily injury depending on the force the pellets are emitted at and which part of the body comes in contact with the paint pellet emitted. A paintball gun is capable of inflicting serious bodily injury, such as permanent eye injury and loss of vision. Indeed, *98 in the game in which the paintball gun is used, the participants wear goggles to provide the necessary protection. See Goldhirsch v. Majewski ex rel. Majewski, 87 F.Supp.2d 272, 274-75 (S.D.N.Y., 2000) (describing generally how the game of paintball is played and the role of the paintball gun); Schneider ex rel. Schneider v. Erickson, 654 N.W.2d 144, 146 (Minn.Ct.App.2002). Additionally, injuries suffered as a result of a paintball gun being shot have been the subject of tort recovery. See Goldhirsch, supra, 87 F.Supp.2d at 274; Schneider, supra, 654 N.W.2d at 147; Leonard ex rel. Meyer v. Behrens, 601 N.W.2d 76, 77-78 (Iowa 1999); Tippmann v. Hensler, 716 N.E.2d 372, 374 (Ind.1999); Taylor v. Hesser, 991 P.2d 35, 36-37 (Okla.Civ.App.1998). Thus, a paintball gun qualifies as a weapon under this offense because it has the capacity, albeit in a limited way, of inflicting serious bodily injury.
Even if the paintball gun is deemed a weapon, G.C. asserts that the plea was improperly accepted because there was no factual basis to establish that the object was possessed under circumstances not appropriate for its lawful use, which is another element of this offense.
The offense of unlawful possession of a weapon is only committed if the object was possessed in "circumstances not manifestly appropriate for such lawful uses" the object may have. N.J.S.A. 2C:39-5d. It is important to note that there is no requirement under this statute that the individual intended to use the object for an unlawful purpose. State v. Lee, 96 N.J. 156, 163-64, 475 A.2d 31 (1984). Rather, the proscription on the possession of an object for an unlawful purpose and other acts of weapons possession are dealt with under a separate provision of Chapter 39 of Title 2C of the statutory code. Id. at 160-62, 475 A.2d 31. N.J.S.A. 2C:39-5d is concerned with the situation where "someone who has not yet formed an intent to use an object as a weapon possesses it under circumstances in which it is likely to be so used." Id. at 161, 475 A.2d 31. The goal is to prevent the threat of harm. Id. at 162, 475 A.2d 31.
In making this determination, the court should examine the "`surrounding circumstancessuch as the size, shape and condition of the [object], the nature of its concealment, the time, [the] place and [the] actions of the carrier when found in his possession.'" Ibid. At least one additional incriminating circumstance, aside from the bare possession, is necessary before conviction under this provision can be sustained. Compare State v. Blaine, 221 N.J.Super. 66, 71, 533 A.2d 980 (App.Div.1987) (holding that mere possession of a pocket folding knife in one's pocket when simply walking down the street is not sufficient to sustain a conviction for unlawful possession of a weapon because there is no additional incriminating circumstance), with Lee, supra, 96 N.J. at 160-64, 475 A.2d 31 (sustaining a conviction for unlawful possession of weapon where defendant was in possession of a pair of scissors taped together to form a stiletto shortly after committing a burglary), and State v. Wright, 96 N.J. 170, 172-73, 475 A.2d 38 (1984) (sustaining a conviction for unlawful possession of a weapon where an Exacto knife was strapped to defendant's ankle underneath his sock), appeal dismissed, 469 U.S. 1146, 105 S.Ct. 890, 83 L.Ed.2d 906 (1985), and Brown, supra, 325 N.J.Super. at 458, 739 A.2d 975 (holding that the commission of a robbery while possessing a kitchen knife is sufficient to convict for unlawful possession of a weapon even if defendant had not yet formed the intent to use the knife). As we have previously noted, the issue under this statutory provision is "not whether a weapon could be *99 lawfully used, but whether the circumstances surrounding the possession were manifestly appropriate for such lawful uses." State v. Colon, 186 N.J.Super. 355, 357, 452 A.2d 700 (App.Div.1982).
Indeed, the Model Charge on N.J.S.A. 2C:39-5d summarizes this element of the offense in these terms.
The third essential element is that the defendant had possession of the weapon under circumstances not manifestly appropriate for such lawful uses as it may have. The State has the burden of proving beyond a reasonable doubt that the defendant's possession of the [paintball gun] was under circumstances not manifestly appropriate for such lawful uses as it may have. It is not necessary for the State to prove that the defendant formed an intent to use that object as a weapon. It is, however, necessary for the State to prove that it was possessed under such circumstances that a reasonable person would recognize that it was likely to be used as a weapon; in other words, under circumstances where it posed a likely threat of harm to others. You may consider factors such as the surrounding circumstances; size, shape and condition of the object, the nature of its concealment, the time, place and actions of the defendant when it was found in (his/her) possession to determine whether or not the object was manifestly appropriate for its lawful use.
[(Emphasis added).]
As the plea colloquy developed, G.C. possessed a paintball gun that he shot at J.H.'s car. No other facts were brought out. To be sure, the primary use of a paintball gun is for playing a game of paintball. However, the use G.C. made of the paintball gun, even if not lawful, posed no danger of serious bodily injury to anyone.
Most significantly, there was a lack of correlation between what enabled a paintball gun to fall within the definition of a weapon under N.J.S.A. 2C:39-1r and the circumstances surrounding the possession that were manifestly inappropriate for such lawful uses it has. There was a total absence of a likely threat of harm to others. That is a key ingredient that binds the first and third elements of the offense to sustain a conviction under N.J.S.A. 2C:39-5d. This is evidenced by the language in the Model Charge that requires the object be "possessed under circumstances where it posed a likely threat of harm to [other individuals]." While there may be a basis to sustain a conviction for the disorderly person offense of criminal mischief, N.J.S.A. 2C:17-3a, and G.C.'s attorney conceded as much at argument, there is a factual insufficiency to sustain the underlying conviction here. We believe that the conclusion we reach here is also supported by the legislative intent underlying the framework adopted to categorize the various weapons possession offenses and their interrelation with the commission of assault crimes. See Villar, supra, 150 N.J. at 509-10, 696 A.2d 674; Lee, supra, 96 N.J. at 160-61, 475 A.2d 31.
We reverse the conviction on the violation of N.J.S.A. 2C:39-5d and remand for further proceedings. In view of the position of both parties and our own sense of fairness, we likewise vacate the sentence resulting from the violation of probation charge and remand for resentencing.