846 A.2d 1222 (2004)
179 N.J. 475
STATE of New Jersey, in the Interest of G.C.
Supreme Court of New Jersey.
Argued January 20, 2004.
Decided May 4, 2004.
*1223 Simon L. Rosenbach, Assistant Prosecutor, argued the cause for appellant, State of New Jersey (Bruce J. Kaplan, Middlesex County Prosecutor, attorney).
Thomas R. Ashley, Newark, argued the cause for respondent, G.C. (Ashley & Charles, attorneys).
Justice VERNIERO delivered the opinion of the Court.
After shooting a paintball gun at an unoccupied automobile, the juvenile in this case pled guilty to unlawful possession of a weapon, a fourth-degree offense. That offense occurs when a person knowingly possesses certain weapons "under circumstances not manifestly appropriate for such lawful uses as [they] may have[.]" N.J.S.A. 2C:39-5d. Such circumstances, the Appellate Division essentially concluded, do not include the firing of a weapon at an object such as an automobile but rather require the threatening of harm to a person. Based on that conclusion, the panel set aside the juvenile's plea. We disagree and reverse.

I.
The facts are straightforward. On June 29, 2001, G.C., a juvenile who was then age fifteen, shot a paintball gun at an automobile parked in a driveway. According to a complaint filed by J.H., the vehicle's owner, the paintball pellet hit the car, causing unspecified damage to it. The State ultimately charged G.C. with offenses that, if committed by an adult, would constitute criminal mischief to a motor vehicle, N.J.S.A. 2C:17-3a; possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4d; and unlawful possession of a weapon, N.J.S.A. 2C:39-5d. G.C. subsequently pled guilty to the unlawful possession charge, which is a fourth-degree offense under N.J.S.A. 2C:39-5d. As a result of that plea, the State dismissed the remaining charges.
*1224 At a hearing conducted by the trial court, the following colloquy took place between G.C. and his attorney to establish the factual predicate for his plea:
Q. And is it correct that you wish to plead guilty to [ ] count two, which is a fourth-degree possession of a weapon and [that] all the other charges are being dismissed?
A. Yes.
Q. Are you doing so voluntarily and waiving your right to trial by doing that?
A. Yes.
Q. Okay. [G.C.], ... on June 29th of this year were you in Piscataway?
A. Yes.
Q. And on that day did you come into possession of a paintball gun?
A. Yes.
Q. And did you shoot at the car of somebodywhat's the name of the person?
A. [J.H.]
Q. [J.H.], and you shot the paintball gun at the car of that person?
A. Yes.
Based on those admissions, the trial court accepted G.C.'s plea. (We assume that the car was unoccupied at the time of the offense, although the above colloquy is not entirely clear in that regard.) The court committed the juvenile to the custody of the Juvenile Justice Commission for one year. Because G.C. was on probation for prior offenses when he committed the unlawful possession offense, he also pled guilty to violating his probation. Regarding the probation offense, the court sentenced G.C. to two years incarceration to run concurrently with the sentence imposed for the weapons offense. The court also assessed the appropriate fines and penalties.
On appeal before the Appellate Division, G.C. claimed that his guilty plea should be set aside because it lacked an adequate factual basis. Specifically, the Appellate Division considered whether a paintball gun is a "weapon" and, further, whether defendant possessed it "under circumstances not manifestly appropriate for such lawful uses as it may have[.]" N.J.S.A. 2C:39-5d. The court concluded that a paintball gun is a weapon for purposes of the statute, disagreeing with G.C.'s contrary contention. In re G.C., 359 N.J.Super. 399, 407, 820 A.2d 93, 97-98 (App.Div.2003). In so doing, the court cited the definition of "weapon" found in N.J.S.A. 2C:39-1r. Id. at 405, 820 A.2d at 97.
As for the second issue, the panel concluded that "there was a lack of correlation between what enabled a paintball gun to fall within the definition of a weapon under N.J.S.A. 2C:39-1r and the circumstances surrounding the possession that were manifestly inappropriate for such lawful uses it has." Id. at 409, 820 A.2d at 99. The court reasoned that, because G.C.'s use of the paintball gun did not pose a threat of harm to a person, the juvenile's plea could not be sustained under N.J.S.A. 2C:39-5d. Id. at 409-10, 820 A.2d at 99. Accordingly, the court set aside G.C.'s conviction and sentence for unlawful possession of a weapon as well as his sentence concerning the probation violation. Id. at 410, 820 A.2d at 99.
We granted the State's petition for certification. 177 N.J. 495, 828 A.2d 922 (2003). The sole question before us is the second question considered by the Appellate Division, namely, whether N.J.S.A. 2C:39-5d requires for conviction that the accused knowingly possessed a weapon under circumstances indicating a likely threat of harm to a person.

II.
The focus of this dispute is N.J.S.A. 2C:39-5, which provides in part:

*1225 a. Machine guns. Any person who knowingly has in his possession a machine gun or any instrument or device adaptable for use as a machine gun, without being licensed to do so as provided in [N.J.S.A.] 2C:58-5, is guilty of a crime of the third degree.
b. Handguns. Any person who knowingly has in his possession any handgun, including any antique handgun without first having obtained a permit to carry the same as provided in [N.J.S.A.] 2C:58-4, is guilty of a crime of the third degree.
c. Rifles and shotguns. (1) Any person who knowingly has in his possession any rifle or shotgun without having first obtained a firearms purchaser identification card in accordance with the provisions of [N.J.S.A.] 2C:58-3, is guilty of a crime of the third degree.
(2) Unless otherwise permitted by law, any person who knowingly has in his possession any loaded rifle or shotgun is guilty of a crime of the third degree.
d. Other weapons. Any person who knowingly has in his possession any other weapon under circumstances not manifestly appropriate for such lawful uses as it may have is guilty of a crime of the fourth degree.

[(Emphasis added.)]
As indicated, subsection d establishes as a fourth-degree offense "the possession of any weapon other than certain unlicensed firearms `under circumstances not manifestly appropriate for such lawful uses as it may have.'" State v. Lee, 96 N.J. 156, 161, 475 A.2d 31, 33 (1984) (quoting N.J.S.A. 2C:39-5d). In a separate provision, "weapon" is defined as "anything readily capable of lethal use or of inflicting serious bodily injury." N.J.S.A. 2C:39-1r. That definition also includes certain identified objects, ibid., as well as "firearms," which are defined in N.J.S.A. 2C:39-1f. See generally Cannel, New Jersey Criminal Code Annotated, comment 4 on N.J.S.A. 2C:39-5 (2003) (outlining elements of statute and summarizing relevant case law).
When satisfying all statutory elements, a person commits a fourth-degree weapons offense even though he or she might not have "intended to use the object for an unlawful purpose." G.C., supra, 359 N.J.Super. at 407-08, 820 A.2d at 98. In that respect, the Appellate Division correctly observed: "N.J.S.A. 2C:39-5d is concerned with the situation where someone who has not yet formed an intent to use an object as a weapon possesses it under circumstances in which it is likely to be so used. The goal is to prevent the threat of harm." Id. at 408, 820 A.2d at 98 (internal quotation marks and citation omitted).
In making that observation, the Appellate Division cited this Court's decision in Lee, supra, 96 N.J. 156, 475 A.2d 31. In that case, we had the occasion to comment at length on the statute's many subsections. In respect of subsection d, we stated:
In 2C:39-5 d, the Legislature addressed the situation in which someone who has not yet formed an intent to use an object as a weapon possesses it under circumstances in which it is likely to be so used. The obvious intent of the Legislature was to address a serious societal problem, the threat of harm to others from the possession of objects that can be used as weapons under circumstances not manifestly appropriate for such lawful uses as those objects may have. Some objects that may be used as weapons also have more innocent purposes. For example, a machete can be a lethal weapon or a useful device for deep sea fishing. A steak knife is appropriate at the dinner table, but sinister when concealed in a car with a BB gun.

*1226 The underlying problem is protecting citizens from the threat of harm while permitting the use of objects such as knives in a manner consistent with a free and civilized society. The statute addresses the problem by outlawing the possession of various weapons in circumstances where they pose a likely threat of harm to others. In striking a balance, the Legislature recognized that an otherwise innocent object can become such a threat.
[Id. at 161-62, 475 A.2d at 33-34 (internal citations omitted) (emphasis added).]
Our statements in Lee concerning "the threat of harm to others" and "protecting citizens" must be viewed within the factual context of that case. In Lee, the police apprehended an individual after an off-duty police officer had observed him burglarizing a home. Id. at 159, 475 A.2d at 32. At the time of the arrest, the police recovered from the defendant "`a pair of scissors taped at the ends,'" which an expert later identified at trial as being a "`stiletto.'" Ibid. (citation omitted). On those facts, we held that N.J.S.A. 2C:39-5d did not require proof that the defendant intended to use the stiletto for an unlawful purpose. Ibid. It was enough that he knowingly possessed the weapon under circumstances posing a likely threat of harm. Id. at 162, 475 A.2d at 34.
We understand how, in citing Lee, the Appellate Division could have concluded that "harm to others" means harm to a person as opposed to an inanimate object. However, we consider "harm to others" more broadly to include damage to a person's property. Given the destructive capabilities of those weapons defined by the statute, the Legislature no doubt sought to prevent or curb possession of them in a wide set of circumstances. From that perspective, we are convinced that the Legislature intended to criminalize under N.J.S.A. 2C:39-5d the conduct at issue in this case. Stated differently, we find nothing within the statute's plain language that would exclude from its purview the circumstances leading to G.C.'s plea and conviction. See State v. Butler, 89 N.J. 220, 226, 445 A.2d 399, 402 (1982) (instructing that Legislature's intent in first instance should be gleaned from statute's literal terms when statute is clear on its face).
Our construction is consistent with another statutory section, N.J.S.A. 2C:39-4d, which provides that "[a]ny person who has in his possession any weapon, except a firearm, with a purpose to use it unlawfully against the person or property of another is guilty of a crime of the third degree." (Emphasis added.) When reviewing related statutory provisions we generally consider them in pari materia, harmonizing their meaning with the Legislature's intent. State v. Green, 62 N.J. 547, 554-56, 303 A.2d 312, 316-17 (1973). Although there are distinctions between a section 2C:39-4d offense and a section 2C:39-5d offense, the two sections sufficiently are related to warrant our conclusion that the Legislature intended each provision to implicate either harm to a person or damage to a person's property.
More specifically, each section reveals the Legislature's determination to prevent the unlawful use of weapons. Section 2C:39-4d accomplishes that aim by explicitly focusing on the actor's intent to use the weapon unlawfully against person or property. Section 2C:39-5d does not require proof of such explicit intent (hence, the grading differential between the two sections), but nonetheless seeks to discourage a weapon's improper employment. It does so by criminalizing the actor's possession of the weapon when the attendant circumstances are not clearly consistent with a lawful use. We would defeat that laudable legislative purpose if we were to *1227 limit the statute by excluding from its reach circumstances that threaten destruction of property.
To be sure, section 2C:39-5d does not refer specifically to "property." That does not, however, demonstrate the Legislature's desire to exclude from that section circumstances implicating damage to property. Rather, it shows only that the Legislature did not want to import the specific intent required under section 2C:39-4d into the offense found in section 2C:39-5d. In respect of that latter section, lawmakers opted for a generalized phrase, "circumstances not manifestly appropriate" for a weapon's lawful use. The Legislature's selection of that language satisfies us that section 2C:39-5d should not be given the narrow interpretation advocated by defendant.
Nor is our analysis altered by the fact that the statute defines "weapon" as "anything readily capable of lethal use or of inflicting serious bodily injury." N.J.S.A. 2C:39-1r. One obvious purpose of that provision is to identify with sufficient clarity the type of object that would satisfy the weapons element of N.J.S.A. 2C:39-5d. The Legislature's describing a weapon in that fashion, however, is different from its indicating how that weapon's use would qualify as a fourth-degree offense. In other words, we do not believe that the Legislature intended G.C.'s circumscribed construction merely because it defined weapon as an object capable of injuring a person.
We again draw on N.J.S.A. 2C:39-4d for support. The "weapon" referred to in that section is the same term (with the same definition under N.J.S.A. 2C:39-1r) found in section 2C:39-5d. Yet, as noted above, section 2C:39-4d explicitly refers to an offender's purpose to use the weapon unlawfully against either a "person or property." That reference to "property" would be nonsensical if the Legislature wanted the definition of "weapon" to correlate to an intended use implicating only harm to a person. By the same reasoning, we conclude that the definition of "weapon" does not preclude section 2C:39-5d from being applied to circumstances threatening only damage to property.
Accordingly, we are persuaded that the phrase "circumstances not manifestly appropriate" under N.J.S.A. 2C:39-5d contemplates either a threat of harm to a person or a threat of damage to property. Neither circumstance constitutes an "innocent purpose[,]" Lee, supra, 96 N.J. at 161, 475 A.2d at 33, and each falls reasonably within the statute's plain text. Here, G.C. actually fired the paintball gun at the automobile (an act technically not required for conviction). Because that act was so clearly improper, it obviates the need to examine more fully whether G.C. had possessed the object under circumstances not manifestly appropriate for its lawful use. See id. at 162, 475 A.2d at 34 (discussing relevant factors, such as manner in which object is concealed, that are used to assess whether statutory elements have been satisfied).

III.
In rendering its decision, the Appellate Division relied in part on the Model Jury Charge relating to N.J.S.A. 2C:39-5d. G.C., supra, 359 N.J.Super. at 409, 820 A.2d at 99. That charge includes this language: "It is ... necessary for the State to prove that [the weapon] was possessed under such circumstances ... where it posed a likely threat of harm to others." Ibid. (internal quotation marks omitted) (emphasis removed). For the reasons already stated, that aspect of the charge is incorrect to the extent that it requires for conviction circumstances threatening harm to a person even when the government has proved circumstances *1228 threatening damage to property. Either set of proofs will satisfy that element of the statute. Therefore, we take this occasion to direct our Committee on Model Criminal Jury Charges to review and revise the charge consistent with this opinion.

IV.
Concerning the sole question presented, we hold that an adequate factual basis existed to support G.C.'s plea under N.J.S.A. 2C:39-5d. To the extent that the Appellate Division's judgment is contrary to our holding, that judgment is reversed.
For reversalChief Justice PORITZ and Justices LONG, VERNIERO, LaVECCHIA, ZAZZALI, ALBIN and WALLACE7.
OpposedNone.