**COMMONWEALTH of Pennsylvania,**
**Appellant,**

v.

**J.H.B., Appellee.**

Superior Court of Pennsylvania.

Argued June 22, 2000.
Filed Sept. 12, 2000.

Kelly S. Fox, Asst. Dist. Atty., Reading, for Com., appellant.

Jeanne Trivellini, Reading, for appellee.

BEFORE: CAVANAUGH, DEL SOLE and TAMILIA, JJ.

TAMILIA, J.:

¶ 1 The Commonwealth appeals from the September 3, 1999 Order of disposition which places appellee, J.H.B., under the terms of informal adjustment.

¶ 2 On February 23, 1999, J.H.B. and his juvenile companion were in possession of a BB gun. J.H.B. shot a girl in the buttocks and his companion shot another girl in the leg. Thereafter, J.H.B. was charged by juvenile petition with simple assault and sale and use of air rifles.[1] Following J.H.B.'s admission to the charges and its acceptance by the Commonwealth and the Court, a hearing was conducted for disposition purposes. The following evidence was presented at the hearing and summarized by the trial court.

J.H.B. is active with Berks County Children and Youth Services (BCCYS) for issues of parental abuse and/or neglect. He continues to receive counseling for his problems with his mother. The counseling, however, has not been successful in reunifying the family and remedying the parent-child conflicts. The BCCYS caseworker believed that the child's issues were actually dependency issues which needed to be addressed in the context of counseling.

The juvenile probation office recommended that J.H.B. live with his baseball coach and his wife instead of with his mother. The child's grandmother lives across the street from the coach so the arrangement would maintain family contact for J.H.B. The probation officer for J.H.B. also believed that the child's problems were primarily those of dependency rather than delinquency.

The Commonwealth refused to agree to a consent decree because a firearm was used in the offense and two victims were involved.

(Trial Court Opinion, Grim, J., 11/17/99, at 2.) Upon review of the evidence, and over the objection of the Commonwealth, the Court ordered the following in the form of an informal adjustment.

- J.H.B. was to reside with his baseball coach and his wife, who were granted temporary legal custody.
- J.H.B. was to continue counseling; pay costs and fees; write a letter of apology to the victim; perform community service; and associate with neither his juvenile companion nor the victims.

¶ 3 On appeal, the Commonwealth seeks a determination as to whether the trial court erred in disposing of the matter through the use of informal adjustment "after the Commonwealth invoked its statutory right to preclude the entrance of a consent decree". (Appellant's brief at 4.)

¶ 4 Appellee responds by arguing that the September 3, 1999 Order of disposition is not a final order subject to review by this Court. We disagree.

 ¶ 5 "In ascertaining what is a final appealable order, this Court must look beyond the technical effect of the adjudication to its practical ramifications." *Grove North America v. Arrow Lift & Constr. Equip. Co.*, 421 Pa.Super. 12, 617 A.2d 369, 372 (1992).

¶ 6 Upon careful review of the language of the Order, we find that it disposes of J.H.B.'S case such that review by this Court is appropriate. Unlike the facts in *Interest of K.B.*, 432 Pa.Super. 586, 639 A.2d 798 (1994), where the order in ques-

---

1. These offenses, if committed by an adult, would constitute the crimes of simple assault, 18 Pa.C.S.A. § 2701, and sale and use of air rifles, 18 Pa.C.S.A. § 6304.

tion was "temporary" in nature thus allowing the court to make a more proper determination of the juvenile's needs in the future, the Order fully disposes of J.H.B.'S case, making it final for purposes of our review. It is no less a final disposition, albeit improper, pursuant to the Juvenile Act than probation or a consent decree. Accordingly, it is proper for this Court to consider the challenges raised by the Commonwealth on appeal pertaining to the authority and discretion of the hearing judge to enter such an Order in relation to the rights of the Commonwealth.

¶ 7 The purpose of the Juvenile Act, 42 Pa.C.S.A. §§ 6301–6365, is as follows:

> (2) Consistent with the protection of the public interest, to provide for children committing delinquent acts programs of supervision, care and rehabilitation which provide *balanced attention* to the protection of the community, the imposition of accountability for offenses committed and the development of competencies to enable children to become responsible and productive members of the community.

42 Pa.C.S.A. § 6301, **Short title and purposes of chapter** (b) **Purposes** (2) (emphasis added).

¶ 8 "Under the [Juvenile] Act, petitions may be disposed of in three ways: by informal adjustment, 42 Pa.C.S.A. § 6323, by consent decree, 42 Pa.C.S.A. § 6340, or by hearing, 42 Pa.C.S.A. §§ 6336, 6341." *In the Interest of B.P.Y.*, 712 A.2d 769, 770 (Pa.Super.1998). This statement of law, however, must be qualified in that informal adjustment is only available *before* a petition is filed or *if* the petition is dismissed for failure of the Commonwealth to establish the charges alleged in the petition.

¶ 9 Following the BB gun incident, J.H.B. was placed under the terms of informal adjustment. The Commonwealth argues that J.H.B. failed to abide by the terms and conditions of the informal adjustment plan and, consequently, his juvenile probation officer recommended that a delinquency petition be filed. Once the petition was filed, the Commonwealth maintains the pre-adjudicatory disposition of informal adjustment was no longer an option available to the Court.

¶ 10 Juvenile probation officer Thomas Brady testified that an intake review was performed on June 4, 1999. Informal supervision was instituted pursuant to section 6323, *supra*, however, within two weeks, J.H.B. had run away from home. Pursuant to the policy objectives of both the juvenile court and the district attorney's office, when a child is placed under an informal adjustment program by the probation office or court, upon violation of the conditions of that program, the policy requires that a formal petition be filed and a hearing on the merits be held subject to the requirements of the Juvenile Act, § 6334 **Petition**, § 6336 **Conduct at hearings**, § 6340 **Consent decree**, § 6341 **Adjudication** and § 6352 **Disposition of a delinquent**. It was Brady's recommendation that J.H.B. "be taken under the care of the Court as a **delinquent** boy ..." (T.T., 9/3/99, at 9) (emphasis added), which required an adjudication of delinquency pursuant to section 6341.

¶ 11 Following informal hearing and receipt of testimony from J.H.B., the victims, the probation office and the Berks County Children Service worker, the court concluded the proper disposition of the case was to impose an Order of court supervision and place J.H.B. in the custody of his school coach pursuant to the provision of the Juvenile Act governing informal adjustment.

¶ 12 The court made a finding based upon the admission of the appellee, made in open court with his mother and counsel present, that he committed the acts of simple assault and sale and use of air rifle. The probation officer recommended appellee be taken under the care of the court as a delinquent boy to reside with Ernest and Lydia Hamilton (T.T., 9/3/99, at 9). The public defender representing the child re-

quested he be placed under informal supervision (T.T. at 10). Discussion then evolved about the utilization of a consent decree, to which the Commonwealth objected (T.T. at 11). The Commonwealth's objection to the consent decree was based upon the fact that the underlying incident involved the use of a weapon against two persons and application of the *balanced approach* doctrine, which is consistent with protection of the public interest. 42 Pa. C.S.A. § 6301(2).

¶ 13 Despite the Commonwealth's objection to entry of a consent decree, the court ordered supervision of J.H.B. pursuant to the informal adjustment provision of the Juvenile Act.

¶ 14 We agree with the Commonwealth. At the outset, we must acknowledge the Juvenile Act is a procedural act, which encompasses the entire statutory scope of the authority and discretion of the juvenile court to exercise jurisdiction over children as defined by the act. There are inherent powers embodied in the role and function of every judicial officer without which the exercise of the office would be hampered. These are not a substitute for or an escape from the clear statutory power and/or limitations governing judicial activity. Absent jurisdiction to act, whether constitutional or statutory, the court is without power to act, even when to do so appears to be in the child's best interest.

¶ 15 In this case, the hearing judge ignored the clearly delineated scope of his authority and discretion to create the instant disposition. However suited to the needs of the juvenile the disposition may be, the statutory scheme for the disposition selected precludes its use under the facts of this case.

¶ 16 Pursuant to the Juvenile Act, court supervision and treatment of delinquent children are divided into two categories, which may be designated pre-petition (informal) and post-petition (informal and official).[2] The first is governed by section 6323, **Informal adjustment**, which provides:

(a) **General rule.**—

(1) Before a petition is filed, the probation officer or other officer of the court designated by it, subject to its direction, shall, in the case of a dependent child where the jurisdiction of the court is premised upon the provisions of paragraph (1), (2), (3), (4), (5) or (7) of the definition of "dependent child" in section 6302 (relating to definitions) and if otherwise appropriate, refer the child and his parents to any public or private social agency available for assisting in the matter. Upon referral, the agency shall indicate its willingness to accept the child and shall report back to the referring officer within three months concerning the status of the referral.

(2) Similarly, the probation officer may in the case of a delinquent child, or a dependent child where the jurisdiction of the court is permitted under paragraph (6) of the definition of "dependent child" in section 6302, refer the child and his parents to an agency for assisting in the matter.

(3) The agency may return the referral to the probation officer or other

---

**2.** One of the traditional features of the juvenile court system is the case screening process known as "intake." "Since the function of intake is to send cases away from the court which would be within its jurisdiction, it might more appropriately be called "outtake"[.]" Stanford J. Fox, *Juvenile Courts,* The Nut Shell Series, 3rd Ed., Chapter IV, § 30, Intake and Diversion (West Publishing Co. 1984), 141.

The intake function, essentially, has merged with the more recently developed practice of diversion. "The intake official is usually required to conduct some sort of inquiry or investigation before reaching a decision. This may include a conference with the child, his parents and the person making the complaint in order to determine if a result satisfactory to all the parties can be reached (the case "adjusted" in common parlance) without a formal petition invoking the jurisdiction of the court." Intake and Diversion, *supra* at 143–144.

officer for further informal adjustment if it is in the best interests of the child.

**(b) Counsel and advice.**—Such social agencies and the probation officer or other officer of the court may give counsel and advice to the parties with a view to an *informal adjustment if it appears:*

(1) counsel and advice without an adjudication would be in the best interest of the public and the child;

(2) the child and his parents, guardian, or other custodian consent thereto with knowledge that consent is not obligatory[.]

The second is controlled by section 6340.

**§ 6340. Consent decree**

**(a) General rule.**—At any time after the filing of a petition and before the entry of an adjudication order, the court may, on motion of the district attorney or of counsel for the child, suspend the proceedings, and continue the child under supervision in his own home, under terms and conditions negotiated with the probation service and agreed to by all parties affected. The order of the court continuing the child under supervision shall be known as a consent decree.

**(b) Objection.**—Where the child *or the district attorney objects* to a consent decree, the court shall proceed to findings, adjudication and disposition.

(Emphasis added.)

¶ 17 The Commonwealth objected to the court's use of informal adjustment and now argues, pursuant to section 6340(b), the court was required to proceed to findings, adjudication and disposition in light of the Commonwealth's objection.

¶ 18 It is helpful to analyze the purpose of the law as it developed as a separate and distinct procedure for resolving antisocial or criminal behavior of juveniles and in dealing with ancillary problems of neglect, deprivation or ungovernable behavior. The Pennsylvania Supreme Court first addressed the constitutionality of the Juvenile Act in *Commonwealth v. Fisher*, 213 Pa. 48, 62 A. 198 (1905).[3] The Court emphasized application of the underlying philosophy of *parens patriae* to save the child from the ordeal of trial in criminal court and incarceration in penitentiaries. By implication, and later by statutory direction, the primary thrust of juvenile law was reformation and rehabilitation and not punishment. Experts from the beginning of the twentieth century, the genesis of juvenile law and procedure, focused on prevention and early intervention and initially encompassed children under the age of 16. Initially, the 1903 law permitted trial of the child in criminal court (courts of quarter sessions and oyer and terminer) for serious offenses and certification to juvenile court for minor offenses or status offenses such as truancy, running away or being ungovernable. It was not until 1933 that juvenile court acquired plenary jurisdiction over juveniles, Act of June 2, 1933, which gave the court both original and exclusive jurisdiction over all crimes, except murder, committed by children under 16. In 1939, the Juvenile Act was amended, Act of June 15, 1939, expanding the jurisdiction to children under the age of 18.

¶ 19 Beginning with the Act of 1933, *supra*, the jurisdiction of juvenile court could be exercised informally by intake office adjustments or formally by petition and court hearings. In neither case would the child acquire a criminal record, which could be used against him as an adult in civil or criminal proceedings. The Juvenile Act of 1933 underwent rewriting and recodification by the Act of December 6, 1972, which itself has been amended frequently. The Act of 1972 spelled out the

---

**3.** Two years earlier, in *Mansfield's Case*, 22 Pa.Super. 224 (1903), the Superior Court declared Pennsylvania's first Juvenile Act (the Act of May 21, 1901) unconstitutional. Consequently, *Commonwealth v. Fisher*, 213 Pa. 48, 62 A. 198 (1905), presented the first opportunity for the Pennsylvania Supreme Court to review the Juvenile Act after a revised version was enacted by the legislature.

specific procedures and functions of informal adjustment and consent decree being considered here.

¶ 20 The logical distinction that flows from the two provisions is that *informal adjustment* is a preliminary pre-petition procedure to provide assistance, counseling and supervision, where the behavior is either socially disruptive (but not criminal) or where the delinquency has not created major or serious consequences. Informal adjustment invokes the court's social service and supervisory resources without implicating the court's formal and coercive powers, including the power to commit the child to custody or confinement. Whatever procedure is undertaken flows from the consent of the child and his parent. If the program fails, the court is powerless to act other than by proceeding formally by petition and/or detention in accordance with the Juvenile Act, upon probable cause, and calling into play the full authority and jurisdiction of the court. If, on the other hand, the program is fulfilled, the case is closed with no official record.

¶ 21 The *consent decree* is a post-petition preliminary procedure used to achieve the same goal as informal adjustment when the behavior is delinquent, but not at the level necessarily requiring formal adjudication and the full range of dispositions available to the juvenile court. Consent decrees are implicated only *after* a petition has been filed and, as with A.R.D. in the adult system, may be considered only when the child, the court *and* the district attorney agree to its implementation. If the tripartite consensus cannot be reached, the court *must* proceed to an adjudicatory hearing on the merits of the petition followed by findings and formal disposition of the case. If all parties agree, the court can construct a program for the child's rehabilitation, not to include commitment or detention. Upon satisfactory completion of the program, the petition is dismissed and no further action may be pur-

sued on the charges contained therein. Failure to complete the program or involvement in additional delinquent or maladjusted behavior will result in the revival of the petition charges to be heard on their merits followed by adjudication and disposition as they would have at the outset.

¶ 22 It is clear from the description of these activities derived from the statute that 1) informal adjustment is not permitted to proceed after a petition is filed, and 2) consent decrees may be implemented only after a petition is filed. The legislature has constructed a carefully delineated and measured process whereby treatment of juveniles by and through juvenile court is based on the least detrimental and restrictive alternative available in keeping with the child's behavior and needs. This case clearly falls within the parameters of the two statutory procedures. Both procedures permit the court or its representatives to escalate immediately the authority and containment applied by the court when the program deteriorates or new delinquent behavior is manifested.

¶ 23 In this case, the bar was crossed in two respects. First, the fact that J.H.B. ran away after informal adjustment procedures had been instituted, without petition, mandated that a petition be filed. Second, after the petition was filed, the district attorney objected to a proposed consent decree. Under each set of facts, there can be no return to a previous level. Policy required a petition be filed once J.H.B. ran away and, once the petition was filed and the district attorney objected to the consent decree, the statute required the matter be heard on its merits followed by findings, adjudication and disposition.

¶ 24 In 1986, there was a significant amendment to section 6340. Prior thereto, the court had the power to enter a consent decree over the objection of the district attorney.[4] Section 6340(b) now requires

---

4. The previous language read: "[When] an objection is made by the district attorney . . .

the court shall, after considering the objections and reasons therefor, proceed to deter-

the court to proceed on the petition to adjudication and disposition once objection is voiced.

¶ 25 There is no escape from this provision by circumvention or retreat into the informal adjustment procedure. The legislative intent is indisputable in providing either the consent decree as prescribed or hearing, adjudication and disposition. We can do no less than follow the legislative mandate.

¶ 26 We are cognizant of the well-intentioned and thoughtful concerns of the distinguished hearing judge who acted with the best interest of the child in mind. We are unable, however, to alter or reconstruct legislation so clearly designed to limit judicial discretion in this regard to support his actions.

¶ 27 The Order of the court is vacated and the case is remanded for a hearing, findings, adjudication and disposition in conformity with this Opinion.

¶ 28 Jurisdiction relinquished.

¶ 29 *Dissenting Opinion by DEL SOLE, J.*

DEL SOLE, J., dissenting.

¶ 1 I agree with the Majority in concluding that 42 Pa.C.S.A. § 6323, **Informal adjustment**, is only applicable before a petition is filed. I also agree that 42 Pa. C.S.A. § 6340(b) requires the district attorney's consent and that this matter is appealable.

¶ 2 However, I believe that the trial court's disposition is authorized and supported by the record. J.H.B. admitted the delinquent acts. The trial court found, on the record, that the acts were proven beyond a reasonable doubt. N.T., 9/3/99, at 5. I would characterize this finding as a *de jure* finding of delinquency pursuant to 42 Pa.C.S.A. § 6341(b). This section provides:

> **Finding of delinquency.**—If the court finds on proof beyond a reasonable

doubt that the child committed the acts by reason of which he is alleged to be delinquent it shall enter such a finding on the record and it shall then proceed immediately or at a postponed hearing, ... to hear evidence as to whether the child is in need of treatment.

42 Pa.C.S.A. § 6341(b).

¶ 3 Accordingly, no procedural steps have been missed. The trial court, after making the finding of delinquency, fashioned a disposition in accordance with the provisions of 42 Pa.C.S.A. §§ 6352(a)(1) and 6351(a)(2)(i). Therefore, while the trial court improperly termed its disposition an "informal adjustment," it was in fact a statutorily-sanctioned remedy following an adjudication of delinquency. Accordingly, I would affirm.

mine whether it is appropriate to enter a consent decree."