**In the Interest of: M.H.M., a minor**

**Appeal of: M.H.M.**

Superior Court of Pennsylvania.

Submitted July 6, 2004.
Filed Dec. 23, 2004.

Scott E. Lineberry, York, for appellant.

George N. Marros, Assistant District Attorney, York, for Commonwealth, appellee.

Before: KLEIN, GANTMAN, and TAMILIA, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, M.H.M., asks us to review the adjudication and dispositional order of the York County Court of Common Pleas, based on the offenses of possession of weapon on school property,[1] criminal mischief,[2] sale and use of air rifles,[3] and paintball guns and paintball markers.[4]

1. 18 Pa.C.S.A. § 912.

2. 18 Pa.C.S.A. § 3304.

3. 18 Pa.C.S.A. § 6304.

4. 18 Pa.C.S.A. § 2707.2.

Specifically, Appellant challenges the court's determination that a paintball gun constitutes a "weapon" under 18 Pa.C.S.A. § 912 and an "air rifle" under 18 Pa. C.S.A. § 6304. We hold a paint ball gun is a "weapon" and an "air rifle" under the respective statutes. Accordingly, we affirm Appellant's adjudication and disposition.

¶ 2 The relevant facts and procedural history of this appeal are as follows. On September 4, 2004, Appellant (D.O.B.7/23/86) and another juvenile left Central York High School during their lunch period. The two drove in Appellant's vehicle, which contained one carbon dioxide-powered paintball gun in the passenger compartment. On multiple occasions during the drive, Appellant stopped his vehicle to discharge the paintball gun at various targets. The first three targets included a garage door and two unoccupied vehicles. After these discharges, Appellant and his cohort stopped for lunch. During their drive back to school, Appellant discharged the paintball gun once more at an unoccupied truck. Shortly thereafter, Appellant parked his vehicle in the school parking lot and placed the paintball gun he had been using in the trunk of the vehicle. Appellant did not detach the ammunition canister from the paintball gun.

¶ 3 Police investigating the damaged automobiles uncovered Appellant as a possible suspect. Later that same day, police contacted Appellant and searched his vehicle after Appellant's father consented to a search. The search revealed six paintball guns in the trunk of the vehicle, which was parked on school property. (N.T. Hearing, 12/11/03, at 5). Police charged Appellant with possession of weapon on school property, criminal mischief, sale and use of air rifles, and paintball guns and paintball markers. On December 11, 2003, the juvenile court conducted a hearing on the matter. Appellant admitted to the facts surrounding the charges. However, Appellant's counsel reserved the legal issue of whether a paintball gun qualified as a "weapon" or an "air rifle" under Sections 912 and 6304 of the Pennsylvania Crimes Code.

¶ 4 Immediately following Appellant's hearing, the court entered an order adjudicating Appellant delinquent. However, the court held in abeyance a final dispositional order until it decided what delinquent acts Appellant had committed:

We note given the history presented, the court is going to find [Appellant] to have committed a delinquent act of something, one way or another, be it possession of a weapon on school property... or be it some other offense that the court can find that can retain jurisdiction over it. That's necessary because the court needs to have that adjudication in order to maintain supervision.

(*Id.* at 26). The order did contain a disposition concerning Appellant's treatment and rehabilitation. (*Id.* at 28–29).

¶ 5 On January 14, 2004, the court entered an order and memorandum opinion clarifying the delinquent acts Appellant had committed. In its opinion, the juvenile court responded to the legal issue Appellant's counsel had reserved at the December 11th hearing. The court determined a paintball gun qualified as both a "weapon" and as an "air rifle" under Sections 912 and 6304 respectively. Thus, the court's order stated Appellant committed the delinquent acts of possession of weapon on school property, criminal mischief, sale and use of air rifles and paintball guns and paintball markers. Appellant filed his notice of appeal with this Court on January 22, 2004.

¶ 6 Appellant now raises the following issue, in two parts, on appeal:

WHETHER THE TRIAL COURT ERRED IN FINDING [APPELLANT] GUILTY BEYOND A REASONABLE DOUBT OF POSSESSION OF A WEAPON ON SCHOOL PROPERTY AND THE SALE AND USE OF AIR RIFLES IN THAT A PAINTBALL GUN DOES NOT MEET THE DEFINITION OF A "WEAPON" PURSUANT TO [18 PA.C.S.A. § 912], NOR DOES IT MEET THE DEFINITION OF AN "AIR RIFLE" PURSUANT TO [18 PA.C.S.A. § 6304?]

    A. DOES A PAINTBALL GUN MEET THE DEFINITION OF A "WEAPON" PURSUANT TO [18 PA.C.S.A. § 912]?

    B. DOES A PAINTBALL GUN MEET THE DEFINITION OF AN "AIR RIFLE" PURSUANT TO [18 PA.C.S.A. § 6304]?

(Appellant's Brief at 7).

¶ 7 As a prefatory matter, we must determine whether this appeal is timely. "[A]ppeals from the [j]uvenile [c]ourt, which is a court of record, to the Superior Court...are governed not by the Juvenile Act [42 Pa.C.S.A. § 6301–20] but by the Rules of Appellate Procedure." *In Interest of Thomas*, 533 Pa. 572, 577, 626 A.2d 150, 153 (1993). Pursuant to Pa. R.A.P. 341, an appeal may be taken as of right from any final order of a juvenile court. *Commonwealth v. Clay*, 376 Pa.Super. 425, 546 A.2d 101, 103 (1988). In order to determine what constitutes a final appealable order, "this Court must look beyond the technical effect of the adjudication to its practical ramifications." *Commonwealth v. J.H.B.*, 760 A.2d 27, 28 (Pa.Super.2000), *appeal denied*, 565 Pa. 639, 771 A.2d 1280 (2001).

¶ 8 Instantly, the juvenile court conducted a hearing on Appellant's case on December 11, 2003. At the start of the hearing, Appellant's counsel reserved the legal issue of whether a paintball gun could qualify as a "weapon" or an "air rifle" under Sections 912 and 6304 respectively. Due to counsel's reservation of this issue, the court did not list Appellant's specific delinquent acts in its December 11, 2003 order adjudicating Appellant delinquent. Thus, the December 11th order was not a final order, even though the order contained a proposed disposition, because the issue of Appellant's delinquent acts was unresolved at that time. *See J.H.B., supra.*

¶ 9 The juvenile court entered another order and memorandum opinion on January 14, 2004. In its opinion, the court responded to the legal issue reserved by Appellant's counsel and determined a paintball gun qualified as a weapon and as an air rifle under Sections 912 and 6304. The court concluded Appellant committed the delinquent acts of possession of weapon on school property, criminal mischief, sale and use of air rifles, and paintball guns and paintball markers. The practical effect of this order is that it concluded the juvenile court's proceedings. Thus, the juvenile court's January 14th order was the final appealable order and Appellant timely filed his notice of appeal on January 22, 2004. *See id.*

¶ 10 In his first issue, Appellant concedes carbon dioxide-powered B–B guns, similar to the paintball guns in the instant case, constitute firearms in cases involving Title 42, Section 9712 of the sentencing code. However, Appellant asserts carbon dioxide-powered B–B guns are not considered firearms under Section 6103 of the Uniform Firearms Act. Appellant maintains his case involves a violation of Title 18, and all of Title 18 must be construed the same way. Thus, Appellant reasons paintball guns, because of their similarities to carbon dioxide-powered B–B guns, should not be considered firearms under 18 Pa.C.S.A. § 912(a).

¶ 11 Additionally, Appellant argues a paintball gun is a weapon under Section 912(a) only if it is "capable of inflicting serious bodily injury." Appellant explains "serious bodily injury" is not defined in Section 912. However, Appellant suggests its definition should be taken from Title 18, Sections 2301 and 2602. Those statutes define serious bodily injury as an "injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Appellant insists paintball guns are specifically designed to be discharged at persons for recreational purposes. Therefore, paintball guns cannot be deemed capable of causing serious bodily injuries. Appellant concludes a paintball gun does not meet the definition of a "weapon" under Section 912 and this Court should reverse the order entered in the juvenile court. We disagree.

■ ¶ 12 "[W]hen the judiciary is required to resolve an issue concerning the elements of a criminal offense, its task is fundamentally one of statutory interpretation, and its overriding purpose must be to ascertain and effectuate the legislative intent underlying the statute." *Commonwealth v. Reaser*, 851 A.2d 144, 148 (Pa.Super.2004) (quoting *Commonwealth v. Booth*, 564 Pa. 228, 233–34, 766 A.2d 843, 846 (2001)) (internal citations omitted). This Court recognizes:

[P]enal statutes are to be strictly construed. The need for strict construction does not require that the words of a penal statute be given their narrowest possible meaning or that legislative intent be disregarded, nor does it override the more general principle that the words of the statute must be construed according to their common and approved usage. It does mean, however, that where an ambiguity exists in the language of the penal statute, such language should be interpreted in the light most favorable to the accused. More specifically, where doubt exists concerning the proper scope of a penal statute, it is the accused who should receive the benefit of such doubt.... Significantly, a court may not achieve an acceptable construction of a penal statute by reading into the statute terms that broaden its scope.

\*      \*      \*      \*      \*      \*

■ Generally speaking, the best indication of legislative intent is the plain language of a statute.... Under [1 Pa. C.S.A.] Section 1921(c), it is only when the words of a statute "are not explicit" that a court may resort to other considerations, such as the statute's perceived "purpose," in order to ascertain legislative intent. Consistently with the Act, this Court has repeatedly recognized that rules of construction, such as consideration of a statute's perceived "object" or "purpose," are to be resorted to only when there is an ambiguity.

*Id.* at 148–149 (quoting *Booth, supra* and *In Re Canvass of Absentee Ballots of November 4, 2003 General Election*, 577 Pa. 231, 242–43, 843 A.2d 1223, 1230 (2004)).

■ ¶ 13 Additionally, we note:

It is axiomatic that in interpreting a statute we may presume that the legislature did not intend an absurd or unreasonable result. We may therefore examine the practical consequences of a particular interpretation.

*Commonwealth v. Davis*, 799 A.2d 860, 870 (Pa.Super.2002) (internal citations and quotation marks omitted).

¶ 14 We begin our analysis by examining Section 912 which provides,

§ 912. Possession of weapon on school property

(a) Definition.—Notwithstanding the definition of "weapon" in section 907 (re-

lating to possessing instruments of crime), "weapon" for purposes of this section shall include but not be limited to any knife, cutting instrument, cutting tool, nunchuck stick, firearm, shotgun, rifle and any other tool, instrument or implement capable of inflicting serious bodily injury.

(b) Offense defined.—A person commits a misdemeanor of the first degree if he possesses a weapon in the buildings of, on the grounds of, or in any conveyance providing transportation to or from any elementary or secondary publicly-funded educational institution, any elementary or secondary private school licensed by the Department of Education or any elementary or secondary parochial school.

18 Pa.C.S.A. § 912(a)-(b) (emphasis added).

¶ 15 A paintball gun is a device designed and manufactured to propel, by gas or air, an encapsulated gelatin paintball. 18 Pa. C.S.A. § 2707.2. "A carbon dioxide-powered gun expels a projectile by the action of an explosive or the expansion of gas therein." *Commonwealth v. Williams*, 353 Pa.Super. 312, 509 A.2d 1292, 1294 (1986). This Court has decided that carbon dioxide-powered B–B guns, similar to the paintball guns used by Appellant, are "firearms" under other statutes, but has not considered whether paintball guns are "firearms" or "weapons" under Section 912.

¶ 16 In considering case law from other jurisdictions with similar statutes, the juvenile court discussed *State in Interest of G.C.*, 359 N.J.Super. 399, 820 A.2d 93 (2003). In that case, the juvenile shot a paintball gun at an unoccupied automobile, and was charged with possession of a weapon pursuant to N.J.S.A. 2C:39–5d. The New Jersey statute states, in pertinent part, "[a]ny person who knowingly has in his possession any other weapon

under circumstances not manifestly appropriate for such lawful uses as it may have is guilty of a crime of the fourth degree." N.J.S.A. 2C:39–5d. For purposes of the New Jersey statute, a weapon is defined as "anything capable of lethal use or of inflicting serious bodily injury." N.J.S.A. 2C:39–1r.

¶ 17 The juvenile argued a paintball gun is not a weapon because it is not a firearm or capable of lethal use or of inflicting serious bodily injury. While the Court agreed that the paintball gun could not satisfy the statutory definition of a firearm, the Court decided the definition of "weapon" under N.J.S.A. 2C:39–1r was broad enough to include paintball guns, because of their capacity to inflict serious bodily harm. *Interest of G.C.*, *supra* at 407, 820 A.2d at 98. The New Jersey Supreme Court ultimately reversed the Superior Court's judgment on other grounds, but did not disturb the determination that a paintball gun satisfies the statutory definition of a weapon. *State ex rel. G.C.*, 179 N.J. 475, 479, 846 A.2d 1222, 1224 (2004) (noting sole question before Supreme Court was whether statute required that accused "knowingly possessed" weapon under circumstances indicating "likely threat of harm" to person).

¶ 18 Instantly, the trial court addressed Appellant's first issue as follows:

This Court is guided by the Superior Court of New Jersey opinion, [*Interest of G.C.*, *supra* ]. In that case, the juvenile possessed a paintball gun that he used to shoot at another person's car. When presented with similar issues that we are now asked to decide that Court held that a paintball gun...does satisfy the definition of weapon [under a New Jersey statute similar to Section 912]. . . .

\* \* \* \* \* \*

[In *Interest of G.C.*, the court] explained that a paintball gun is capable of inflicting serious bodily injury depending on the force the pellets are emitted at and which part of the body comes in contact with the paint pellet emitted. A paintball gun is capable of inflicting serious bodily injury, such as permanent eye injury and loss of vision. Indeed, in the game in which the paintball gun is used, the participants wear goggles to provide the necessary protection. Thus, a paintball gun is deemed a weapon under this offense because it has the capacity, albeit in a limited way, of inflicting serious bodily injury. [*Interest of G.C.*, *supra* at 407, 820 A.2d at 97]

\*       \*       \*       \*       \*       \*

[Appellant], in the case at bar, was charged with the offense of possession of weapon on school property, which states that a person commits a misdemeanor of the first degree if he possesses a weapon...on the grounds of...any elementary or secondary publicly-funded educational institution.... Unlike the offense in [*Interest of G.C.*], which required that the weapon be possessed in circumstances not manifestly appropriate for such lawful uses the object may have, the offense of possession of weapon on school property has no additional incriminating circumstance aside from bare possession.

Therefore, we hold that a paintball gun does meet the definition of "weapon" for purposes of [Section] 912...because it is capable of inflicting serious bodily injury.

(Juvenile Court Opinion, entered January 14, 2004, at 3–4) (some internal citations and quotation marks omitted). Following our own careful review of the relevant facts and case law, we agree with the trial court's analysis. *See Reaser, supra.* We conclude a carbon dioxide-powered paint-ball gun falls within the definition of a weapon for purposes of Section 912.

■ ¶ 19 In his second issue, Appellant refers to the definition of "paintball gun" set forth in 18 Pa.C.S.A. § 2707.2, *supra*. Because our Legislature defined the term "paintball gun" in Section 2707.2 and did not include this term in Section 6304, Appellant reasons the Legislature did not intend for Section 6304 to govern the use of paintball guns. Appellant concedes a paintball gun could still be considered an air rifle under Section 6304 if it is an "implement that is not a firearm, which impels a pellet of any kind with a force that can reasonably be expected to cause bodily harm." However, Appellant maintains paintball guns are specifically designed to discharge at other persons for recreational purposes and, therefore, are unlikely to cause bodily harm. Appellant concludes a paintball gun does not meet the definition of an "air rifle" under Section 6304 and this Court should reverse the juvenile court's disposition. We disagree.

¶ 20 Section 6304 states, in relevant part:

§ 6304. Sale and use of air rifles

\*       \*       \*       \*       \*       \*

(b) Carrying or discharging air rifles.—

(1) It shall be unlawful for any person under 18 years of age to carry any air rifle on the highways or public lands unless accompanied by an adult, except that a person under 18 years of age may carry such rifle unloaded in a suitable case or securely wrapped.

(2) It shall be unlawful for any person to discharge any air rifle from or across any highway or public land or any public place, except on a properly constructed target range.

\*       \*       \*       \*       \*       \*

(g) Definitions.—As used in this section the following words and phrases shall have the meanings given to them in this subsection:

"Air rifles." Any air gun, air pistol, spring gun, B–B gun, or any implement that is not a firearm, which impels a pellet of any kind with a force that can reasonably be expected to cause bodily harm.

18 Pa.C.S.A. § 6304(b)(1)-(2) and (g).

¶ 21 Instantly, the juvenile court provided further analysis on the risk of injury associated with paintball guns:

A "paintball gun" is defined as a device designed and manufactured to propel, by gas or air, an encapsulated gelatin paintball. 18 Pa.C.S.A. § 2707.2. Paintball guns are carbon dioxide-powered, in that carbon dioxide propel[s] the pellet upon discharge of the weapon. [For Appellant's first issue, this] court has held...that paintball guns are capable of causing serious bodily injury, and although they are meant for recreational purposes, the fact that safety goggles and protective gear are worn, and that there are rules prohibiting discharging the paintball gun in particular areas of the opponents' bodies to avoid injury, participants recognize that the guns can reasonably be expected to cause bodily harm. Therefore, a paintball gun meets the definition of air rifle because it is an implement that is not a firearm, which impels a pellet of any kind with a force that can reasonably be expected to cause bodily harm.

(Juvenile Court Opinion at 6) (some internal quotation marks omitted). Again, we agree with the juvenile court's resolution of Appellant's issue. We will not disturb the court's decision to include carbon dioxide-powered paintball guns within the definition of air rifles in Section 6304. *See Reaser, supra.*

¶ 22 Based upon the foregoing, we hold a paint ball gun constitutes a "weapon" under 18 Pa.C.S.A. § 912 and an "air rifle" under 18 Pa.C.S.A. § 6304. Accordingly, we affirm Appellant's adjudication and disposition.

¶ 23 Order affirmed.

¶ 24 Judge KLEIN files a concurring statement.

¶ 25 Judge TAMILIA joins the Opinion by Judge GANTMAN and the Concurring Statement by Judge KLEIN.

KLEIN, J., concurring:

¶ 1 I concur in the majority's decision, but write separately to point out my belief that absent the shooting at buildings and unoccupied cars during M.H.M.'s school lunch break, the possession of the paintball gun would have been for a lawful purpose and M.H.M. would have been able to avail himself of the defense in 18 Pa.C.S.A. § 912(c).

¶ 2 Section 912(c) provides that "it shall be a defense that the weapon is possessed and used in conjunction with a lawful supervised school activity or course or is possessed for other lawful purpose." 18 Pa.C.S.A. § 912(c) [emphasis added]. The evidence indicates that M.H.M. used the gun the night before for a properly sponsored paintball game and drove his car to school, planning to participate in another paintball game after school. The testimony was that the games were sponsored by M.H.M.'s church group. Under those circumstances, the only reason the guns were on the school property was because they were in the Defendant's car awaiting lawful use at his church functions.

¶ 3 However, while it is a close case, I believe the unlawful use during the lunch hour deprives the defendant of the defense under 912(c) that he had the paintball guns for a lawful use.

¶ 4 I also write separately to note that the rules of statutory construction and the statutory language of section 912 make for a close case here. It is true that while penal statutes are to be construed strictly, legislative intent must be considered, and words are to be construed according to their common and approved uses. As noted by the cases cited by the majority, "It does mean, however that where an ambiguity exists in the language of the penal statute, such language should be interpreted in the light most favorable to the accused."

¶ 5 Paintball guns are not the only implements not specifically stated in the statute that can cause serious bodily injury if not properly used. A baseball can cause serious bodily injury, and no catcher would play in a formal game without a mask and chest and shin protectors. No hockey goalie today would face a puck without a mask.[5] Baseballs and hockey pucks can cause serious bodily injury or even death. So can a pencil if poked in someone's eye.

¶ 6 When the legislature wanted to specifically sanction the manner in which a paintball gun is to be handled, it knew how to do it. In 18 Pa.C.S.A. § 2707.2, the statute spells out how a paintball gun is to be carried in a vehicle. The legislature does not call it a "weapon" or something that can "cause serous bodily injury." It calls it a "paintball gun."

¶ 7 As noted by the majority, definitions of firearms are all over the lot in different sections of the statutes. I do not quarrel with the majority's conclusion that a paintball gun is an "implement capable of inflicting serious bodily injury[,]" 18 Pa. C.S.A. § 912(a), but this case illustrates the necessity for straightforward and precise statutory language. If we read the statutes to favor the defendant in cases involving ambiguity, there is a strong argument that paintball guns are not subject to criminal sanctions. If the legislature wanted to make it clear that the serious penalties for carrying firearms on school property applied to paintball guns, all it had to do was add the words "paintball guns" to the definition of 18 Pa.C.S.A § 912. The legislature knew how to spell out nunchuck sticks, and it could have spelled out paintball guns as well.

---

5. I must confess that I am old enough to have seen Ivan Wamsley, the goalie for the old Philadelphia Ramblers minor league hockey team, play without a mask in the 1950's. However, since the 1960's and Terry Sawchuk and Jacques Plante, goalies have not been so foolish, and all wear masks.