J-S53020-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: T.R.H., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: T.R.H. | No. 2085 MDA 2014 |

Appeal from the Dispositional Order October 21, 2014
In the Court of Common Pleas of Luzerne County
Juvenile Division at No(s): CP-40-JV-0000004-2014

BEFORE: DONOHUE, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 18, 2015**

T.R.H. appeals from the dispositional order entered in the Court of Common Pleas of Luzerne County on October 21, 2014 and amended on October 22, 2014, which adjudicated T.R.H. delinquent on one count of possession of a weapon on school property.[1] T.R.H. was remanded to Glen Mills School. In his sole issue in this timely appeal, T.R.H. argues the juvenile court erred in determining the inoperable pellet gun he possessed was a "weapon" pursuant to statute. After a thorough review of the certified record, the submissions by the parties, and relevant law, we reverse.

Although T.R.H. states his issue in terms of sufficiency of the evidence, his argument is one of statutory construction.

_____

[1] 18 Pa.C.S. § 912(b).

Where reviewing a claim that raises an issue of statutory construction, our standard of review is plenary. We recognize:

Our task is guided by the sound and settled principles set forth in the Statutory Construction Act, including the primary maxim that the object of statutory construction is to ascertain and effectuate legislative intent. 1 Pa.C.S. § 1921(a). In pursuing that end, we are mindful that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Indeed, "[a]s a general rule, the best indication of legislative intent is the plain language of a statute." In reading the plain language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage," while any words or phrases that have acquired a "peculiar and appropriate meaning" must be construed according to that meaning. 1 Pa.C.S. § 1903(a). However, when interpreting non-explicit statutory text, legislative intent may be gleaned from a variety of factors, including, *inter alia:* the occasion and necessity for the statute; the mischief to be remedied; the object to be attained; the consequences of a particular interpretation; and the contemporaneous legislative history. 1 Pa.C.S. § 1921(c). Moreover, while statutes generally should be construed liberally, penal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant.

Notwithstanding the primacy of the plain meaning doctrine as best representative of legislative intent, the rules of construction offer several important qualifying precepts. For instance, the Statutory Construction Act also states that, in ascertaining legislative intent, courts may apply, *inter alia,* the following presumptions: that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable; and that the legislature intends the entire statute to be effective and certain. 1 Pa.C.S. § 1922(1),(2). Most importantly, the General Assembly has made clear that the rules of construction are not to be applied where they would result in a construction inconsistent with the manifest intent of the General Assembly. 1 Pa.C.S. § 1901.

*Commonwealth v. Wilson*, 113 A.3d 747, 751 (Pa. Super. 2015) (citation omitted).

The underlying facts are simply recounted. On April 4, 2013, T.R.H., then 13 years old, was a student at Dodson Elementary School in Wilkes-Barre, Pennsylvania. He had in his possession a small, metal, pellet gun, fashioned as a handgun. It was broken and inoperable. It was incapable of firing any projectile by any means. Those facts were stipulated to by the parties. There was no additional testimony regarding the nature of the object. There was no indication of its weight or actual size. There was no evidence presented as to the danger the object posed if used to assault someone. The certified record does not contain a picture of the object, nor the object itself. *See* N.T. Adjudication Hearing, 3/7/2014, at 5, 12; N.T. Disposition Hearing, 10/21/2014, at 11. The sole question before the juvenile court is identical to the sole question before our court; does an inoperable pellet pistol meet the definition of weapon pursuant to Section 912?

The relevant language from Section 912 is as follows:

Notwithstanding the definition of "weapon" in section 907 (relating to possessing instruments of crime), "weapon" for purposes of this section shall include but not be limited to an knife, cutting instrument, cutting tool, nunchuk stick, firearm, shotgun, rifle and any other tool, instrument or implement capable of inflicting serious bodily injury.

18 Pa.C.S. § 912(a).

For reference purposes, the definition of "weapon" in Section 907 is as follows:

> Anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have. The term includes a firearm which is not loaded or lacks a clip or other component to render it immediately operable, and components which can readily be assembled into a weapon.

18 Pa.C.S. § 907(d).

Herein, all parties agreed that the object in question was a pellet gun in name only, as it could not fire a projectile. Although Section 907 states a firearm that is not immediately inoperable is within the statutory definition of a weapon, there is no such provision in Section 912. We look at this language only for guidance, as even if the pellet gun had been operable, it would not fit any statutory definition of a firearm.[2] A pellet or BB gun is not a firearm under the Uniform Firearms Act. **Commonwealth v. Schilling**, 431 A.2d 1088 (Pa. Super. 1981). The Commonwealth has asserted, without citation, the object at issue herein is a firearm. We do not agree.

---

[2] Section 908, regarding prohibited offensive weapons, defines a firearm as "any weapon that is designed to or may readily be converted to expel any projectile by the action of an explosive, or the frame or receiver of any such weapon." 18 Pa.C.S. § 908(c). Sections 6105, 6106, and 6107 also use this definition.

A panel of our Court addressed a similar fact pattern in ***In the Interest of: M.H.M.***, 864 A.2d 1251 (Pa. Super. 2004). In that case, M.H.M. possessed a carbon dioxide powered paintball gun, which he had used to shoot at and vandalize cars and garage doors during his school lunch hour. The paintball gun was not considered to be a firearm, but was determined to be a weapon; that is, something that could cause serious bodily injury because it was capable of firing a projectile that could cause permanent eye injury and loss of vision. Instantly, all parties have agreed that the pellet gun in question cannot fire any type of projectile. Accordingly, there is no risk of any injury similar to that described in ***M.H.M.***

The only risks identified by either the Commonwealth or the juvenile court are that the pellet gun could be thrown or used to otherwise injure someone. Indeed, the juvenile court stated, "Of course, as you'll recall my comment to the effect that regardless as to the degree of plastic or metal, any item is capable of being used as a deadly weapon." N.T. Dispositional Hearing, ***supra***, at 11. However, as noted above, at the adjudication hearing **no** evidence was presented regarding the object's capability of causing any type of bodily injury, much less serious bodily injury or fatal injury. The notes of testimony from the March 7, 2014 adjudication hearing do not contain the judge's observation nor the basis of that observation. Because the comment itself is not to be found in the certified record and, more importantly, there is no evidentiary basis for that statement, we cannot consider it in our analysis of the sufficiency of the evidence.

Additionally, the juvenile court's observation is an overly broad definition of "weapon." If any item can be used to cause serious bodily injury, then any item brought to school that has no immediate use in school, could be cause for arrest and prosecution.

Finally, we note that schools have the inherent power to maintain discipline which would allow the school to confiscate the object, and perhaps even suspend the offender, thereby preventing any further disturbance or threat. While we do not condone bringing such objects[3] to schools, we believe that in circumstances such as are instantly present, internal disciplinary procedures are sufficient to protect the integrity of the schools, without subjecting the student to criminal sanctions.

Pursuant to the rules of statutory construction, Section 912 must be read in a common sense manner that does not contradict the language of the statute. We believe Section 912 is intended to prevent instruments capable of causing serious bodily injury from being brought onto school property, thereby protecting both students and school personnel. The statute specifies a number of objects that may not be possessed, such as firearms and knives, but also contains a non-specific category of "any other

---

[3] We note that a pellet gun is statutorily defined as an "air rifle", which is "any air gun, spring gun, spring pistol, B-B gun, or any implement that is not a firearm which impels a pellet of any kind with a force that can reasonably be expected to cause **bodily injury**." 18 Pa.C.S. §6304(g) (emphasis added). T.R.H. was charged with violating section 912, which requires the object be capable of inflicting "**serious** bodily injury."

tool, instrument, or implement capable of inflicting serious bodily injury". We acknowledge the object looked like a firearm, but the statute does not criminalize the possession of an object for merely resembling something dangerous. Therefore, we need not expand the definition to include a small, non-functioning pellet gun, which is not capable of inflicting serious bodily injury even if functioning as designed.

Because a functioning pellet gun does not automatically qualify as a weapon pursuant to relevant statutory definitions, logically, there must be other evidence not contained in this certified record that the non-functioning pellet gun was capable of causing serious bodily injury. Accordingly, we must conclude the object at issue herein, a small, non-functioning pellet gun, is not a weapon under Section 912.[4]

Dispositional Order reversed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/18/2015

---

[4] T.R.H. has also raised a constitutional challenge, claiming Section 912 is impermissibly vague. Because we have resolved the claim on other grounds, we need not address the constitutional claim. ***See, In re Fiori***, 673 A.2d 905 (Pa. 1986) (courts should avoid constitutional issues when the issue at hand may be resolved upon other grounds).